[Docket No. 4]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ALFREDA JONES-SINGLETON, <br><br> Plaintiff, <br><br> v. <br><br> MUTUAL OF OMAHA INSURANCE COMPANY, <br><br> Defendant. | Civil No. 22-6249 (RMB/EAP) <br><br> OPINION |

**APPEARANCES**

Alfreda Jones-Singleton
1 Jasmine Drive
Burlington, New Jersey 08016

    *Plaintiff*, pro se

Steven J. Schildt
Post & Schell, P.C.
Four Penn Center, 13th Floor
1600 John F. Kennedy Boulevard
Philadelphia, Pennsylvania 19103

    *On behalf of Defendant Mutual of Omaha Insurance Company*

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court upon the Motion to Dismiss of Defendant Mutual of Omaha Insurance Company ("**Defendant**"), [Docket No. 4 (the "**Motion**")], which was filed on November 1, 2022, along with its Brief in Support of the Motion, [Docket No. 4-2 ("**Def.'s Br.**")]. Plaintiff Alfreda Jones-Singleton

("**Plaintiff**"), who is proceeding *pro se*, untimely filed an Opposition on May 25, 2023,[1] [Docket No. 6 ("**Pl.'s Opp'n**")], and Defendant submitted a Reply Brief on June 6, 2023, [Docket No. 7 ("**Def.'s Reply**")]. Having been fully briefed, this matter is ripe for adjudication. For the reasons that follow, Defendants' Motion will be **GRANTED**, **IN PART**, and **DENIED**, **IN PART**, and Plaintiff's claim for intentional and/or negligent infliction of emotional distress (Count III of the Complaint) will be **DISMISSED**, **WITHOUT PREJUDICE**.

I.   FACTUAL BACKGROUND

This action involves a dispute regarding a Long-Term Disability Income Insurance Policy issued by Defendant to Plaintiff in 2010. The parties disagree as to whether Plaintiff is entitled to the payment of disability benefits due to certain physical conditions she experienced. Because the Motion pending before the Court addresses a subset of the claims Plaintiff asserts against Defendant in the above-captioned action, the Court recites only those facts it deems necessary to dispose of the Motion.[2]

Defendant is an insurance company incorporated in Nebraska, with a principal place of business in Omaha. [Notice of Removal ¶ 5, Docket No. 1.] Plaintiff is a

---

[1] On May 8, 2023, the Court afforded Plaintiff an opportunity to file a response to the Motion by directing Plaintiff to submit her pleading no later than twenty-one (21) days following the date of the Court's Order. [Docket No. 5, at 1–2.]

[2] Consistent with the governing legal standards set forth below, see *infra* Section IV, the Court assumes the truth of the well-pleaded allegations included in Plaintiff's Complaint and all reasonable inferences deduced therefrom. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).

citizen of New Jersey, residing in Burlington Township. [*Id.* ¶ 4.] On October 15, 2010, Defendant issued a Long-Term Disability Insurance Policy (the "**Policy**") to Plaintiff. [Complaint ¶ 6, Docket No. 1 ("**Compl.**"); *see also id.*, Ex. 3 (the Policy).] She remained insured under the Policy until her coverage lapsed on May 9, 2022 due to non-payment of premiums, [Compl. ¶¶ 2, 3; *see also id.*, Ex. 2 (Policy cancellation)], and Defendant declined to reinstate coverage in a letter dated August 24, 2022, [Compl. ¶ 5].

While she remained covered under the Policy, Plaintiff submitted two claims for benefits. First, in October 2018, Plaintiff filed a claim for long-term disability benefits related to various mental or nervous conditions she experienced as of March 26, 2018, including major depressive disorder and generalized anxiety disorder.[3] [*Id.* ¶ 8; *see also id.*, Ex. 1 (letter from Def. dated Sept. 22, 2021).] Plaintiff received disability benefits pursuant to this claim until August 24, 2020, when her Policy's lifetime maximum was reached and her benefits were terminated accordingly.[4] [Compl. ¶ 7; *see also id.*, Ex. 1.]

Second, on July 31, 2020—shortly before the benefits related to her mental conditions claim terminated—Plaintiff "added" a claim for long-term disability benefits related to physical conditions she experienced, including vertigo and

---

[3] Plaintiff ceased working on September 28, 2018. [Compl., Ex. 5 (Pl.'s letter of appeal to Def. dated Sept. 25, 2021).]

[4] The Policy stipulates that benefits payable for mental or nervous disorders are limited to a lifetime maximum of 24 months. [Compl., Ex. 3, at 6.]

fibromyalgia. [Compl. ¶ 8.] On August 19, 2021, Defendant completed a medical file review and concluded, *inter alia*, that insufficient documentation substantiated Plaintiff's claim of disabling physical conditions.[5] [*Id.* ¶¶ 47, 48, 58, 68, 77; *see also id.*, Ex. 4 (Report of Dr. Thomas A. Reeder, M.D.).] On September 22, 2021, Plaintiff's claim was thus denied. [Compl., Ex. 1.] Plaintiff disagreed and filed an appeal. [Compl., Ex. 5 (Pl.'s letter of appeal to Def. dated Sept. 25, 2021).] In her letter of appeal, and again in the Complaint, Plaintiff contends that the medical review performed by Dr. Reeder was unreasonably delayed, contains inaccurate facts and incorrect diagnoses, and reflects bias in Defendant's favor. [Compl. ¶¶ 38–40, 41, 64.]

The second claim is the subject of the instant dispute before the Court. Plaintiff alleges that between the date of her claim (i.e., July 31, 2020) and the date Defendant completed its review of Plaintiff's medical file (i.e., August 19, 2021), Defendant "implored stalled tactics [sic]" and "continually ask[ed] Plaintiff to submit additional information," which "caused unreasonable delays." [*Id.* ¶¶ 30, 32.] In particular, Defendant repeatedly e-mailed Plaintiff asking her to return signed authorizations for the release of her medical records. [*Id.* ¶¶ 9–16.]

For example, on or about August 6, 2020, Gregory Richt, a Technical Benefits Specialist for Defendant, sent a request to Plaintiff for signed authorizations and the contact information for her doctors. [*Id.* ¶ 9.] On or about September 10, 2020, Plaintiff

---

[5] An addendum was added to the medical file review on September 13, 2021 to address a January 29, 2021 neuropsychological evaluation that Plaintiff apparently submitted to Defendant on February 21, 2021. [Compl. ¶ 18; *see also id.*, Ex. 4.]

4

replied to Mr. Richt informing him that Defendant already possessed signed authorizations from her as well as from her doctors but nonetheless provided him with the contact information of her doctors. [*Id.* ¶ 10.] On or about September 24, 2020, Plaintiff supplemented her response to Mr. Richt with another signed authorization. [*Id.* ¶ 11.]

On or about November 25, 2020, Mr. Richt informed Plaintiff that Defendant was having trouble procuring her medical records from two doctors at Virtua Health, as the health system has a special authorization form. [*Id.* ¶ 12.] On or about December 30, 2020, Plaintiff returned an executed copy of the Virtua Health authorization to Defendant. [*Id.* ¶ 13.] On or about February 3, 2021, March 24, 2021,[6] and May 28, 2021, Mr. Richt sent letters to Plaintiff informing her that review of her claim remained delayed because he had been unable to obtain Plaintiff's medical records from Virtua Health. [*Id.* ¶¶ 14–16.] On or about September 10, 2021, Plaintiff was contacted by Jan Hoden, another representative of Defendant, regarding the documentation that Plaintiff had been repeatedly asked to submit and why her claim had not yet been processed. [*Id.* ¶ 31.] In that correspondence, Jan Hoden explained, "It would appear that Mr. Richt did not move [Plaintiff's medical documentation] into the claim file as

---

[6] In the Complaint, Plaintiff asserts that the February 3rd and March 24th letters were sent in 2020. [Compl. ¶¶ 14–15.] However, her request for physical benefits was sent to Defendant on July 31, 2020, so these letters would be outside of the relevant timeline of events if they were sent in 2020. Given the content of the letters, the Court's best understanding is that these letters were sent in 2021.

it is not here, [sic] I cannot access anything that he received by email unless he moved it to the claim file." [*Id.*]

As stated above, on September 22, 2021, Plaintiff was informed that her claim for benefits based on her alleged physical medical conditions was denied because the medical records did not clearly support a diagnosis of fibromyalgia, there was "no documentation of any physical disorder . . . that would be impairing or disabling," and there was evidence of "symptom exaggeration." [*Id.*, Ex. 1.] As far as the Court can discern, Plaintiff's appeal of Dr. Reeder's medical file review was ultimately denied. [*See generally* Pl.'s Opp'n.]

Finally, Plaintiff alleges that Defendant intentionally and/or negligently caused her physical pain and emotional distress as a result of the foregoing conduct of Defendant. [Compl. ¶ 80.] Plaintiff claims that she experienced increased headaches, neck pain, back pain, anxiety, physical pain and suffering, as well as economic losses. [*Id.* ¶ 86.]

Plaintiff requests $48,000 of unpaid long-term disability benefits, including prejudgment interest. [*Id.* ¶ 87.] Additionally, she requests the reinstatement of her policy as well as $2,200 per month for future benefits if she remains disabled. [*Id.*] Furthermore, Plaintiff requests $50,000 for emotional distress, $50,000 for pain and suffering, as well as punitive damages, compensatory damages, any applicable attorneys' fees, and costs associated with bringing this claim. [*Id.*]

## II. PROCEDURAL BACKGROUND

On September 23, 2022, Plaintiff initiated this litigation in New Jersey Superior Court, Burlington County Law Division, asserting the following claims against Defendant: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing (the "**Implied Covenant**"), and (3) "intentional and negligent" infliction of emotional distress (respectively, "**IIED**" and "**NIED**"). [Compl. ¶¶ 83–85.] On October 25, 2022, Defendant removed the action to this Court pursuant to 28 U.S.C. § 1441, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. [Notice of Removal ¶ 3.] On October 28, 2022, this matter was referred to arbitration. [*See generally* Docket.] On November 1, 2022, Defendant filed the pending Motion seeking to dismiss Plaintiff's second and third claims pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket No. 4.]

## III. JURISDICTION

The Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332, as there exists a "complete diversity" of citizenship between the parties and the amount in controversy exceeds $75,000. Moreover, the Court finds that venue in this judicial district is proper, as the dispute occurred in New Jersey and the parties do not otherwise contest venue.

## IV. LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must

accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); then citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); and then citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

8

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

## V.   DISCUSSION

As previewed above, Plaintiff asserts three claims against Defendant. First, Plaintiff claims that Defendant is liable for breach of contract because Defendant denied her claim for disability benefits. [Compl. ¶ 1.] Second, Plaintiff claims that Defendant breached the Implied Covenant by failing to conduct a prompt and impartial investigation of Plaintiff's July 31, 2020 request for disability benefits.[7]

---

[7] Plaintiff also purports to assert a claim under the New Jersey Unfair Claims Settlement Practices Act (UCSPA), N.J. Stat. Ann. § 17:29B-4. [Compl. ¶ 84; Pl.'s Opp'n 1.] Defendant contends that § 17:29B-1 does not provide a private cause of action for unfair trade or settlement practices. [Def.'s Br. 5–6.] Defendant is correct. There is no private right of action under § 17:29B-1. *See, e.g., Nationwide Mutual Ins. Co. v. Caris*, 170 F.Supp.3d 740, 748 (D.N.J. 2016) ("[T]here is no private right of action for policyholders against their insurers based on UCSPA violations or negligence."). Accordingly, such claim will be dismissed to the extent it is asserted. *See id.*

[Compl ¶¶ 28–79; Pl.'s Opp'n 7–8.] And third, Plaintiff asserts a claim against Defendant for IIED and/or NIED for alleged pain and emotional distress caused by Defendant's alleged mishandling of the request for disability benefits. [Compl. ¶¶ 80–82, 85–86.]

Defendant's Motion focuses on the second and third claims. Defendant first argues that Plaintiff does not have an independent cause of action for her breach of the Implied Covenant claim because it is based on the same underlying conduct as the breach of contract claim—Defendant's denial of her request for disability benefits. [Def.'s Br. 4–5; Def.'s Reply Br. 3–5.] With respect to IIED and/or NIED, Defendant asserts that Plaintiff has failed to plead that Defendant's alleged breach of contract involved any conduct that was intentional or reckless, or resulted in severe and foreseeable emotional distress. [Def.'s Br. 6–8; Def.'s Reply Br. 7–9.] The Court addresses each claim, and the parties' arguments in response thereto, in turn.

### A.   Breach of the Implied Covenant of Good Faith and Fair Dealing

Under New Jersey law, all contracts include an implied covenant that the parties to a contract will act in good faith. *Pickett v. Lloyd's*, 621 A.2d 445, 450 (N.J. 1993) (citations omitted). The Implied Covenant "mandates that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1074 (N.J. Super. Ct. App. Div. 2002) (internal quotation marks and citations omitted). The Implied Covenant, however, does not "create a cause of action separate from a breach

of contract claim" where the claims are based on the same underlying conduct. *Tredo v. Ocwen Loan Servicing, LLC*, 2014 WL 5092741, at *6 (D.N.J. Oct. 10, 2014) (citing *Wade v. Kessler Inst.*, 778 A.2d 580, 588 (N.J. Super. Ct. App. Div. 2001), *aff'd as modified*, 798 A.2d 1251 (N.J. 2002)). Still, New Jersey courts recognize an independent cause of action based on the Implied Covenant in three limited situations:

> (1) to allow the inclusion of additional terms and conditions not expressly set forth in the contract, but consistent with the parties' contractual expectations; (2) to allow redress for a contracting party's bad-faith performance of an agreement, when it is a pretext for the exercise of a contractual right to terminate, even where the defendant has not breached any express term; and (3) to rectify a party's unfair exercise of discretion regarding its contract performance.

*Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 365 (D.N.J. 2006) (citing *Seidenberg*, 791 A.2d at 1077). In the third scenario, allegations reflecting a party's "bad faith and improper motive"—necessary for any Implied Covenant claim—are especially important, as "discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance." *Seidenberg*, 791 A.2d at 1078–79 (quoting *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001)). Ultimately, to state an Implied Covenant claim, the plaintiff must set forth a cognizable theory that the defendant acted in bad faith or engaged in some other form of inequitable conduct in the performance of a contractual obligation. *Intervet, Inc. v. Mileutis, Ltd.*, 2016 WL 740267, at *4 (D.N.J. Feb. 24, 2016) (citation and quotation marks omitted).

Here, Defendant contends that Plaintiff's Implied Covenant claim is based on the same underlying conduct as her breach of contract claim and none of the foregoing

11

situations is apparent based on the facts alleged. [Def.'s Br. 4–5; Def.'s Reply Br. 3–5.] While the Court agrees with Defendant that the first two scenarios are not discernable from the Complaint, construing Plaintiff's *pro se* pleadings liberally, *see Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009), the Court identifies allegations concerning the third situation—that Defendant unfairly exercised its discretion pursuant to the terms of the Policy to deny her claim for benefits, *see Barrows*, 465 F. Supp. 2d at 365.

In particular, Plaintiff avers that Defendant "did not attempt in good faith to effectuate prompt and equitable settlement of the [July 31, 2020 claim] in which liability was reasonably clear." [Compl. ¶¶ 28–29, 33.] Plaintiff also alleges that Defendant employed "stall tactics" for over a year by repeatedly asking Plaintiff to submit additional information, some of which was already in Defendant's possession. [*Id.* ¶¶ 8–17, 30, 38–39.] Furthermore, Plaintiff claims that Defendant failed to conduct a "fair and impartial review" of her medical file by engaging an unqualified physician, misstating or misrepresenting facts, and disregarding diagnoses and other evidence. [*Id.* ¶¶ 45–65.] In other words, Plaintiff's theory of breach of the Implied Covenant is not simply that Defendant should have granted her request for disability benefits and thereby is liable for breach of contract; it is that Defendant acted in bad faith in its review and disposition of her request, to her detriment.  Under the pleading standards of Federal Rule of Civil Procedure 8, the Court concludes that Plaintiff's allegations, though scant, are sufficient to state a claim for breach of the Implied Covenant. *See Hills v. Bank of Am.*, 2015 WL 1205007, at *4 (D.N.J. Mar. 17, 2015) (denying motion to dismiss when plaintiff alleged that defendant "routinely demand[ed] information

already in its files, thus delaying and thwarting the disbursement process"). Accordingly, the Court will not dismiss Count II of Plaintiff's Complaint at this juncture.

Still, as the court explained in *Hills*, "Plaintiff is on notice that the evidence must clearly show actual bad faith on Defendant's part" in order to prevail as to her Implied Covenant claim. *See id.* If the evidence fails to reveal bad faith conduct, the Court anticipates that Defendant will file a motion for summary judgment seeking the dismissal of such claim.

### B.     Intentional and Negligent Infliction of Emotional Distress

Next, the Court considers Plaintiff's claim for IIED and/or NIED, which the Court discerns to be premised on her allegations concerning Defendant's mishandling of her request for disability benefits. [*See* Compl. ¶¶ 80–82, 85–86; *see also* Pl.'s Opp'n 10.] New Jersey courts permits recovery for emotional distress resulting from a breach of contract where it involves conduct that is intentional (or negligent) and outrageous and proximately causes severe, foreseeable emotional distress. *See Picogna v. Bd. of Educ. of Twp. of Cherry Hill*, 671 A.2d 1035, 1037 (N.J. 1996) (collecting cases). Whether emotional distress damages can be found is a matter of law for the Court to decide. *See id.*

Here, Plaintiff alleges that Defendant's conduct resulted in headaches, neck pain, back pain, anxiety, physical pain and suffering, as well as economic losses. [Compl. ¶ 86.] Defendant contends that Plaintiff has failed to plead facts showing that

Defendant's alleged mishandling of the request for disability benefits was "intentional and outrageous" and proximately caused Plaintiff "severe, foreseeable emotional distress."[8] [Def.'s Br. 7–8.]

The Court agrees with Defendant and finds that Plaintiff has failed to state a claim for IIED or NIED. First, Plaintiff has not set forth any allegations showing that Defendant's conduct was "outrageous," which refers to conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988) (citation omitted). Without sufficient detail concerning this element, Plaintiff cannot proceed on either theory of infliction of emotional distress. Furthermore, Plaintiff has not set forth a causal connection between Defendant's conduct and her headaches, neck pain, back pain, and other injuries. Plaintiff's allegations do not clearly explain how Defendant's delay and denial of her request for disability benefits caused the distress she claims to have experienced. Finally, these allegations of "emotional distress" fail to rise to the level warranting relief. *See Buckley*, 544 A.2d at 863 (explaining that the emotional distress must be "so severe that no reasonable man could be expected to endure it") (citation and internal quotation marks omitted). Accordingly, the Court will dismiss

---

[8] Plaintiff claims that she experienced "egregious aggravation" because Defendant's conduct forced her to file a lawsuit. [Pl.'s Opp'n 10.] But Defendant correctly asserts that any "litigation-induced stress" is not recoverable as a separate component of emotional distress damages. *See Picogna*, 671 A.2d at 1038–39.

14

Count III of Plaintiff's Complaint without prejudice.

## VI. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss will be **GRANTED**, **IN PART**, and **DENIED**, **IN PART**. An accompanying Order shall issue on today's date.

**July 6, 2023**                                            **s/Renée Marie Bumb**  
DATE                                                           RENÉE MARIE BUMB  
                                                                Chief United States District Judge